UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
(COLUMBIA DIVISION)

| | |
|---|---|
| Brad Valdes and Kathryn Valdes,<br><br>Plaintiffs,<br><br>v.<br><br>Hartford Insurance Company of the Midwest,<br><br>Defendants. | Case No.: 3:25-cv-4229-SAL<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiffs, Brad and Kathryn Valdes ("Plaintiffs"), by and through their undersigned counsel, bring this Complaint against Hartford Insurance Company of the Midwest and allege the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs, Brad and Kathryn Valdes, own a home at 30 Tupelo Trail in Columbia, South Carolina in Richland County.

2. Defendant Hartford Insurance Company of the Midwest is a corporation organized and existing under the laws of Connecticut and is licensed to do business in South Carolina.

3. The Court has jurisdiction over this action and the parties pursuant to 28 U.S.C. § 1332. Further, his Court has "original exclusive" jurisdiction over the matters claimed in this suit, as per 42 U.S.C. § 4072. In addition, this Court has federal jurisdiction over these matters as per 28 U.S.C. § 1331 and § 1337.

4. This Court has supplemental jurisdiction over any and all state-law based claims, as per 28 U.S.C. §1367.

5. Venue is proper in this district, pursuant to 28 U.S.C.A. § 1391, as a substantial part of the events and omissions giving rise to the claim are in this district and the property that is insured by Defendant is located in this district.

## FACTUAL ALLEGATIONS

6. Plaintiffs' house is located in Richland County, at the address of 30 Tupelo Trail, Columbia, South Carolina (referred to hereinafter as the "House").

7. Defendant sells insurance policies to South Carolina residents including those residing in Richland County. Specifically, Defendant sold a flood insurance policy to insure the risk of loss from flooding to Plaintiffs' House pursuant to the National Flood Insurance Program.

8. The flood insurance policy period extends from March 3, 2024 to March 3, 2025.

9. On September 26, 2024, Columbia, South Carolina, was subject to a rainstorm that continued for several days. This storm caused the Gregg Park pond behind Plaintiffs' House to overflow, accumulate, and impede upon multiple acres and other residences in the Columbia area, including Plaintiffs' House, property, and residence. Several feet of water flooded into the first level of Plaintiffs' House, causing damage to floors, walls, electrical systems, furnishings, etc.

10. This is not the first time Plaintiffs' House has flooded. On October 4, 2015, another flood caused damage to this **same** area of Plaintiffs' House when it was previously owned by The Honorable Mary G. Lewis and her husband, A. Camden Lewis (the "Lewis Family").

11. Plaintiffs were under contract for the House, and had already moved into it, when the 2015 flood took place.

12. On October 6, 2015, Defendant's agent Paulette Cuminale told the Lewis Family the House was covered under the flood insurance policy and that Defendant would advance $100,000.00 to the Lewis Family.

13. On October 23, 2015, Plaintiffs and the Lewis Family closed on the sale of the House relying on Defendant Cuminale's representation that the house was covered under the policy and relying on the advancement to cover damage.

14. Defendant then refused to pay out according to the policy, claiming the insurance policy provided limited coverage.

15. The prior owners, the Lewis Family, were forced to file a lawsuit in this Court making nearly identical arguments that are being asserted in this case. See Case No. 3:15-CV-04769-RJC-SVH.

16. During litigation, on March 30, 2016, Defendant conceded the House was **not** a post-FIRM elevated structured as identified in the flood policy, stating "As we discussed, following the engineer's visit to the property, **the structure will be adjusted as a slab on grade three story residence instead of as a post FIRM elevated structure as identified on the Policy. This means that the limitations set forth in Article 3(A)(8) and 3(B)(3) of the Policy, as to a post firm elevated building (or a basement), will not apply to this claim**." See **Exhibit 1** (emphasis added).

17. After the lawsuit was filed but before substantial discovery took place, Defendant rightfully paid the prior owners. In turn, the Lewis Family paid the net proceeds to Plaintiffs as the new owners of the House to complete repairs.

18. On September 27, 2024, a day after flooding occurred in the Plaintiffs' House, Plaintiff Brad Valdes called the Defendant, who informed Plaintiffs to begin remediation immediately to prevent adverse effects such as mold. Plaintiffs received a letter from Defendant, dated September 30, 2024, confirming this authorization to begin remediation.

19. Relying on this representation, Plaintiffs began to mitigate the damages from the flood, including incurring costs to remove furniture, place equipment to dehumidify the flooded area, hire third-party contractors to mitigate damages, including tearing out baseboards, drywall, insulation, and carpets, applying anti-microbial agent, cleaning, trash removal, etc.

20. On October 11, 2024, Plaintiffs submitted a claims request for flood damage to Mark Spradlin, the insurance adjuster, agent, and employee for Defendant, who came out to inspect the House and evaluate damages to determine coverage under Plaintiffs' policy. Plaintiffs completed the Proof of Loss and Advance Payment Request with their personal contractors, including the contractor that rebuilt the House after the 2015 flood.

21. On October 22, 2024, Mark Spradlin, working on behalf of Defendant, informed Plaintiffs that their Advanced Request Form was rejected.

22. On October 29, 2024, Mark Spradlin told Plaintiffs, via voice message, Defendant was going to proceed as though the House was an "elevated dwelling with an enclosure", meaning that it has limited coverage. However, Spradlin told Plaintiffs that an engineer would be hired by Defendant to inspect the House and determine if it was in fact a post-FIRM elevated structure, and coverage would be determined based on the engineer's findings.

23. On January 21, 2025, before the engineer's inspection took place, Mark Spradlin, on behalf of Defendant, issued a Proof of Loss report to Plaintiffs stating the House was considered an "elevated building" and subject to no or limited coverage. Despite extensive damage including but not limited to Plaintiffs' personal property, walls, flooring trims, and cabinets, Defendant determined that Plaintiffs were only entitled to $21,160.52.

24. Plaintiffs received a check, dated January 31, 2025, for $16,272.04—the total amount Defendant claims it owed for flood damage after Plaintiffs' $5,000 deductible.

25. On February 5, 2025, the engineer hired by Defendant to complete the home inspection and determine whether the House was, in fact, an "elevated structure" visited the House—a week **after** Defendant had already pre-determined coverage and issued payment.

26. Before Defendant's engineer released any findings on the House's categorization, the Plaintiffs received a denial letter, dated February 5, 2025, stating that because the House was categorized as a post-FIRM elevated building, only limited coverage applied:

| | | | |
|---|---|---|---|
| Building Covered Damages: | $21,160.52 + | Contents Covered Damages: | N/A |
| Less Prior Payment: | N/A | Less Prior Payment: | N/A |
| Less Deductible: | $5,000.00 - | Less Deductible: | $5,000.00 - |
| Recoverable Depreciation: | $111.52 + | | |
| Building Payable Amount: | $16,272.04 | Contents Payable Amount: | $0.00 |

Our adjuster's report dated 1/21/2025 advises that the insured building is considered an elevated building, located in a special flood hazard zone, and it was constructed after the flood insurance rate map date for your area. This is referred to as a post-FIRM elevated building. In these cases, the SFIP provides limited coverage for all items located below the first elevated floor, and only the items listed in the policy are eligible for coverage. The adjuster reports that there were flood damages to walls, flooring, trim, cabinets, and personal items. Unfortunately, these items are ineligible for coverage and we must deny payment to repair or replace them. Please refer to the applicable policy language found in the policy section(s) listed below:

27. This statement is directly contrary to what Defendant determined and represented during the House's first flood in 2015, despite no structural changes to the House and despite the House having the exact same flood policy as it did in 2015.

28. Now, Defendant is acting in bad faith by asserting contrary arguments and trying to avoid paying for damage to the same area of Plaintiffs' House.

29. Defendant has essentially gambled on the fact that maybe Plaintiffs would not file suit, and if that were the case Defendant could avoid paying for the new flood damage in which it is obligated to pay.

30. Unfairly forcing policy holders to hire attorneys and file suit before paying for valid claims is in bad faith, unreasonable, and unfair conduct on behalf of the Defendant.

31. The policy includes in its coverage: "Additions and extensions attached to and in contact with the dwelling by means of a rigid exterior wall, a solid load-bearing interior wall, a stair way, an elevated walkway or a roof."

32. While the flooded area is not an addition (i.e., it was not constructed after the house was built), it is attached to and in contact with the dwelling by means of an interior stairway and is thereby included in coverage.

33. The flooded area includes a living space, finished with heat, air conditioning, and power, with a view of a neighborhood lake. There is also a workshop as well as mechanical rooms for the HVAC, steam heater, water heater, elevator, sprinkler system and invisible fence.

34. In addition, contrary to Defendant's claim, the flooded first floor is not an enclosure below the lowest elevated floor because the house has dual elevations, due to the way the property was cut. The first floor is above ground level, and the entrance and exit are out to the patio, pool, and lake in the back yard, while the second floor opens out to the street level in the front. In other words, one is not required to climb up to ground level from the first floor to enter or exit the home.

35. Likewise, the flooded area is not a basement as defined by the policy; "Any area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides." As detailed in the paragraph above, the first floor is not below ground level on all sides.

36. As the Defendant has previously admitted, the House is also **not** a post-FIRM elevated structure, so coverage for damage including but not limited to personal property should not be limited.

37. In addition to denying coverage for the damage to the House, Defendant now claims that the contents that were destroyed by the flooding are also not covered by the policy, including

6

but not limited to "walls, flooring, trim, cabinets, and personal items."

38. The Defendant deliberately led Plaintiffs to believe that the House and its contents were covered by the insurance policy. The Defendant also advised Plaintiffs to pay for repairs immediately and represented that advances would be made to repay Plaintiffs, and even sent paperwork to facilitate the advances. After Plaintiffs spent thousands of dollars based on the representations and Defendant's previous coverage, the Defendant has refused to make the promised advances or provide the coverage as contracted for and promised.

39. Denying a claim on the grounds that Defendant's own engineer previously refuted (see chart below) is a bad faith breach of contract and an unfair trade practice:

| 2015 CONCLUSION BY DEFENDANT'S ENGINEER | 2025 BAD FAITH DENIAL |
|---|---|
| "As we discussed, following the engineer's visit to the property, **the structure will be adjusted as a slab on grade three story residence instead of as a post FIRM elevated structure** as identified on the Policy. This means that the limitations set forth in Article 3(A)(8) and 3(B)(3) of the Policy, **as to a post firm elevated building (or a basement), will not apply to this claim**." See Exhibit 1 (emphasis added). | "Our adjuster's report dated 1/21/2025 advises that **the insured building is considered an elevated building**, located in a special flood hazard zone, and it was constructed after the flood insurance rate map date for your area. This is referred to as **a post-FIRM elevated building**. In these cases, the SFIP provides limited coverage for all items located below the first elevated floor…" |

40. Furthermore, the bad faith denial includes a false statement: the adjuster did not advise that the insured building was a post-FIRM elevated structure. When Mr. Spradlin was asked, "How did you reach the conclusion that the damages are to a post-FIRM elevated enclosure?" he responded, "The conclusion was not reached by me."

41. In total, the estimated cost of flood damage exceeds hundreds of thousands of dollars—the exact amount of which is to be determined at trial.

42. Based on the prior repairs from the flood at issue in the Lewis Family's suit, Plaintiffs expect to have to replace or repair appliances, damage to the pool, furniture, cabinets, air conditioner, countertops, sinks, electronics, furnishings, etc.

## FOR A FIRST CAUSE OF ACTION
### (Bad Faith Refusal to Pay)

43. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

44. At the time Plaintiffs' home was damaged, Plaintiffs were insured by Defendant under a flood insurance policy effective through March 3, 2025.

45. This homeowners' policy is a mutually binding contract of insurance between Plaintiffs and Defendant.

46. Plaintiffs' House sustained severe damage due to the overflow of water from the Gregg Park Pond in September 2024, in Richland County, which allowed an enormous amount of muddy water to flow from it and eventually into Plaintiffs' House.

47. To date, Defendant has refused to pay benefits to Plaintiffs due under the homeowners' policy to cover the damages to Plaintiffs' House caused by the flooding, claiming that the area flooded was below the first elevated floor and only subject to limited coverage. Defendant has also refused to provide coverage for the contents damaged by the flood.

48. Defendant's refusal to pay is unreasonable and in bad faith.

49. Defendant's repeated refusal to pay benefits due under the contract constitutes a breach of the implied covenant of good faith and fair dealing inherent in every South Carolina contract, including the contract at issue.

50. As a result of Defendant's actions, Plaintiffs have been injured in amount to more specifically proven at trial. Furthermore, Defendant has acted willfully and in reckless disregard for Plaintiffs' rights, therefore rendering them liable for punitive damages.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

51.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

52.     At the time Plaintiffs' home was damaged, Plaintiffs were insured by Defendant under a flood insurance policy effective through March 3, 2025.

53.     This flood insurance policy is a mutually binding contract of insurance between Plaintiffs and Defendant.

54.     Pursuant to the contract, Plaintiffs have submitted a claim for damage to their House following the September 2024 flooding.

55.     To date, Defendant has refused to pay benefits to Plaintiffs due under the policy and thus, Defendants have breached the contract between the parties.

56.     Plaintiffs have been damaged as a direct and proximate result of Defendant's breach of contract.

## FOR A THIRD CAUSE OF ACTION
### (Fraud in the Inducement)

57.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

58.     In 2015, Plaintiffs closed on the House purchase from the Lewis Family, and obtained the same insurance policy with Defendant based on the Defendant's representation that the policy provided full coverage of the House, including the area which had previously flooded in 2015.

59.     Defendant now denies coverage for the 2024 flood damage to the same area of the House on the basis that the House is a post-FIRM elevated structure subject to limited coverage. Defendant made this determination and issued payment **before** Defendant's engineer inspected the House.

9

60. Defendant now has stated that there is either no coverage or limited coverage, and thus, the initial statements made by Defendant that the House and its contents were covered were false.

61. Full flood coverage was material to Plaintiffs' decision to close on the House purchase from the Lewis Family in 2015.

62. Defendant knowingly or in reckless disregard made the representation that the House was not a post-FIRM elevated building or that full flood coverage would be provided to Plaintiffs.

63. Defendant made these representations with the intent that Plaintiffs would choose Defendant as its insured under the same flood insurance policy previously provided to the Lewis Family.

64. Plaintiffs did not and could not have known that Defendant's previous misrepresentations were false.

65. Plaintiffs reasonably relied on the Defendant's previous actions and statement that the House was not a post-FIRM elevated structure with limited coverage when choosing to obtain a flood insurance policy with Defendant.

66. Plaintiffs have been damaged as a direct and proximate result of Defendant's breach of contract and false reliance.

## FOR A FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

67. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

68. From 2015 to present, Defendants have made numerous false representations to Plaintiff as described in detail above.

69. As Plaintiffs' insurer, Defendant had a pecuniary interest in making said statements and denying and/or limiting coverage for the flood damage.

70. As Plaintiffs' insurer, Defendant owed a duty of care to Plaintiffs to communicate truthful information regarding its flood insurance policy.

71. Defendant breached its duty of care by:

    a. Limiting and/or denying coverage,

    b. Issuing its Proof of Loss report limiting and/or denying said coverage,

    c. Issuing a check in furtherance thereof before completing any engineering inspection to determine the type of structure of the House as previously represented,

    d. Allowing its agents, representatives, and employees, to make false statements regarding the categorization of the House's structure,

    e. Failing to provide adequate coverage despite admitting the House is a not a post-FIRM elevated structure,

    f. Allowing Plaintiffs to enter into a homeowner's insurance policy with Defendant despite knowing of its misrepresentations,

    g. Any and all remaining representations outlined above.

72. Plaintiffs reasonably and justifiably relied on Defendant's representations.

73. Plaintiffs have been damaged as a direct and proximate result of Defendant's breach of contract and false reliance.

**FOR A FIFTH CAUSE OF ACTION**
**(Violation of the South Carolina Unfair Trade Practices Act)**
**(S.C. Code Ann. § 39-5-10 *et seq*)**

74. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

75. Defendant's actions in attempting to limit coverage or deny coverage of Plaintiff's House, and given the representations and actions taken by Defendant as noted herein, is a willful unfair and deceptive act or practice.

76. Plaintiffs suffered an ascertainable loss of money as a result of Defendant's unfair acts, methods and practices.

77. Defendant's procedures create a potential for repetition of the unfair acts, methods and practices and thus they impact the public interest.

78. Further, the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence.

79. Defendant's actions as outlined above and herein are in and affecting commerce.

80. Defendant's actions as outlined above and herein proximately caused damage to Plaintiffs.

81. Defendant's conduct is offensive to the public policy of this State, is immoral, unethical, and oppressive to all homeowner's policy owners.

### FOR A SIXTH CAUSE OF ACTION
### (Equitable Estoppel)

82. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

83. Defendant is equitably estopped from asserting that the insurance policy does not cover the full extent of the flood damage and that Plaintiffs' House is a post-FIRM elevated structured because:

    a. Defendant admitted that the House was not a post-FIRM elevated structured in the 2015 litigation.

    b. Defendant previously covered all flood damage in the exact same areas that flooded in 2015.

  c. Defendant had actual or constructive knowledge of the insurance policy, the terms of the insurance policy, and its previous representations to Plaintiffs regarding coverage.

84. Plaintiffs lacked knowledge or means of knowledge of the fact that Defendant would fail to honor the insurance policy and seek to avoid its obligations to Plaintiffs.

85. Plaintiffs relied to their detriment upon Defendant's representations concerning the insurance policy, and have been damaged thereby.

WHEREFORE, Plaintiffs Brad and Kathryn Valdes respectfully request that judgment be entered in their favor against Defendant on all causes of action and that Court award actual damages, treble damages, punitive damages, pre-judgment interest, attorneys' fees and costs, and such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

                **RICHARDSON THOMAS, LLC**

                *s/Brady R. Thomas*
                Brady R. Thomas (Fed. I.D. No. 9623)
                brady@richardsonthomas.com
                Dixie N. McCollum (Fed. I.D. No. 14376)
                dixie@richardsonthomas.com
                1513 Hampton St., 1st Floor
                Columbia, SC 29201
                T: (803) 281-8150
                F: (803) 632-8263
                brady@richardsonthomas.com
                dixie@richardsonthomas.com

                **ATTORNEYS FOR PLAINTIFFS**

Dated: May 19, 2025

Columbia, South Carolina